## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERROL COLE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-10876** |
| **DARREL VANNOY, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "B"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Terroll Cole, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On June 17, 2010, Cole was charged by bill of indictment in Jefferson Parish with the second degree murder of Donald Bates in violation of La. Rev. Stat. § 14:30.1.[3]

The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial as follows in relevant part:

> On January 29, 2010, Donald Bates was murdered in his home at 2217 Eastmere Street in the Woodmere neighborhood of Harvey, Louisiana. At trial, Carolyn Bates, the victim's wife, testified that she returned to the couple's shared home from work at approximately 3:00 p.m. to find her husband's van gone and the front door of the residence ajar.  Upon entering the home, Ms. Bates saw blood on the floor of the entry hallway, closet doors open, and sofa pillows tossed aside.  The blood and disorder within the entryway to the home prompted Ms. Bates to exit and have a friend call police to the home.
> Jefferson Parish Sheriff's Office's Deputy Jeffrey Easterly responded to the 9–1–1 call along with another deputy.  Deputy Easterly testified that, upon entering the home, the two deputies observed blood on the floor and walls of the hallway, along with a used bullet casing and a live round on the floor of the hallway.  The two officers proceeded further into the residence where they observed blood in the entrance to a bedroom, and in a bathroom within this bedroom, the officers discovered the victim's body.  Doctor Susan Garcia, a forensic pathologist with the Jefferson Parish Forensic Center, performed an autopsy of the victim the following day and testified that the cause of the victim's death was a lethal gunshot through his heart and lung.  Doctor Garcia also testified that the victim was shot at least three times and

---

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 10, Bill of Information, 6/17/10.  Co-defendants Darnell Turner and Rhonda Skinner were also charged in the indictment.  Skinner ultimately entered into a plea agreement with the State to provide testimony against Cole and Turner in exchange for a reduced charge.  Turner was tried separately and convicted.

that there was evidence of blunt force trauma present on the victim's body, indicating a struggle took place prior to the victim's death. Sergeant Gary Barteet with the Jefferson Parish Sheriff's Office homicide division was the scene detective responsible for documenting the scene of the crime. Sergeant Barteet testified that lying on top of the victim's body was a pillow with a bullet hole through it, as if the shooter had attempted to muffle the sound of a gun with the pillow, and that the entire home was in disarray, suggesting that someone had been looking for something within the home.

Police officers investigating the murder obtained the victim's cell phone records to determine who had communicated with the victim prior to his death. Detective Solomon Burke, the lead investigator on this case, testified that the cell phone records showed that the victim received his last phone call around 8:53 a.m. the morning of his death and that the call was from Rhonda Skinner. Detective Burke was able to contact the phone company and track the location of Skinner's phone to the Siesta Motel in Marrero, Louisiana. Sometime after midnight following the murder, officers went to the motel and secured Skinner and her companion, Kenneth Devore, in their motel room. Skinner later admitted that she was alerted to the police officers' presence at the motel and flushed her phone's SIM card down the toilet in an attempt to avoid being located.

Detective Burke and other officers interviewed Skinner many times over the course of approximately one and a half to two days following her arrest. Detective Burke testified that initially Skinner gave investigating officers false information concerning the crime. Skinner also admitted during her testimony that she lied to police officers early in the investigation to protect other individuals involved in the crime, but that after police officers began catching her in her lies she told the officers the truth.

Skinner testified that she had been friends with the victim for approximately two years prior to his death. On January 28, 2010, the day before the murder, Skinner accompanied the victim in his van to a check cashing business where the victim cashed a check for $12,500 he had obtained from the sale of his Cadillac. After accompanying the victim on several errands to pay off debts and purchase narcotics, the victim dropped Skinner off at her apartment building. Before departing from Skinner, the victim instructed her to call him after his wife left for work at 5:30 or 6:00 the next morning. Skinner testified that the next morning she participated in several phone calls with Kenneth Devore, her boyfriend, Darnell Turner, and defendant, to discuss robbing the victim of his recently acquired money. Skinner testified that, at the time of the crime, she had known Turner for a couple of months and defendant for most of his life.

3

Later that morning, defendant, along with Darnell Turner, Tanisha Stamps, and Katrice Batiste picked up Skinner in Batiste's car. After dropping off Tanisha Stamps at Turner's residence on Destrehan Avenue in Harvey, Louisiana, the remaining occupants of the vehicle travelled to the Woodmere neighborhood, where the victim had told Skinner he lived, to search for the victim's van in order to locate his residence. After locating and identifying the victim's van parked outside of his home, defendant and Turner exited the vehicle at a nearby intersection and approached the house to rob the victim. Skinner testified that the plan was for defendant and Turner to knock on the door, speak with the victim, and try to find the money within the house, but that murder was never part of their plan.

Skinner and Batiste remained in Batiste's car and returned to Turner's residence on Destrehan Avenue where they picked up Tanisha Stamps. Shortly after arriving at the Destrehan residence, Katrice Batiste received a phone call from defendant instructing them to meet him at his father's residence on Marine Street in Marrero. Skinner testified that when she arrived at the residence, she entered a room in the back of the house, where she noticed that defendant was sweating and wearing different clothes than he had been wearing earlier that day. She also testified that she noticed a black garbage bag in the same room containing a latex glove turned inside out. Skinner asked defendant what happened and he told her that when they attempted to rob the victim, Turner pulled out a gun and the victim charged Turner and struggled with him for the gun, so defendant had to "pop him with a gun." Defendant gave Skinner and Turner $900 each and kept $1,000 from the robbery. Tanisha Stamps and Katrice Batiste also testified that while at this residence Batiste attempted to lie down on a sofa and burnt her head on a hot gun lying on the arm of the sofa. Before departing from the Marine Street residence with Batiste, Turner, Skinner, and Stamps, defendant placed a black garbage bag in the trunk of Batiste's car. The group then made a short stop at defendant's mother's house so that defendant could get a pair of shoes before dropping off Skinner at her home.

Detective Burke testified that when officers recovered the victim's van, which was discovered on fire a couple of blocks away from Turner's Marine Street home on the day of the murder, they discovered, among other things, two pairs of burned shoes.

At some point in the days following the murder, defendant, Turner, Batiste, and Stamps traveled to Little Rock, Arkansas, in Batiste's car, where they stayed in various hotels for a few days. During the trip to Little Rock, Tanisha Stamps testified that she witnessed defendant carrying a gun on his person, though she did not know if the gun was the same one upon which Batiste had burned her head while lying on the sofa in the Marine Street

4

residence. Batiste testified that while staying in a Little Rock hotel, she asked defendant what it meant when a gun was hot. Batiste testified that defendant did not go into detail, but that he replied that "it was hot because it had been shot" and that "he put the pillow over his face and hit it five times."

At some point thereafter, Batiste and Stamps departed Little Rock without defendant and Turner. The two women were arrested in Mississippi, where Detective Burke interviewed them. Both Batiste and Stamps gave police officers statements implicating defendant in the murder and both positively identified defendant in a photographic lineup.

Defendant and Turner were also arrested at some point after splitting ways with Batiste and Stamps. Detective Burke interviewed defendant while he was incarcerated in an Arkansas jail. During that interview, defendant told the detective that he was in Baton Rouge on the day of the murder and identified several individuals who could confirm his alibi. Detective Burke followed up with defendant's alibi, but he was unable to find any witnesses who could corroborate defendant's alibi, including defendant's wife and his girlfriend..

State v. Cole, No. 15–KA–358, 182 So. 3d 1192, 1195-1198 (La. App. 5th Cir. December 23, 2015); State Record Volume 8 of 10, Louisiana Fifth Circuit Court of Appeal Opinion, 15-KA-358, pages 3-7, December 23, 2015.

Cole was tried before a jury on August 19 through 22, 2014 and was found guilty as charged by a verdict of ten (10) to two (2).[4] He was sentenced on September 4, 2014, to life in prison without benefit of parole, probation or suspension of sentence.[5]

---

[4]St. Rec. Vol. 1 of 10, Trial Minutes, 8/19/14; Trial Minutes, 8/20/14; Trial Minutes, 8/21/14; Trial Minutes, 8/22/14; Verdict, 8/22/14; St. Rec. Vol. 7 of 10, Trial Transcript, 8/19/14; Trial Transcript, 8/20/14; Trial Transcript, 8/21/14; St. Rec. Vol. 8 of 10, Trial Transcript (con't), 8/21/14; Trial Transcript, 8/22/14.

[5]St. Rec. Vol. 1 of 10, Sentencing Minutes, 9/4/14; Uniform Commitment Order, 9/5/14; St. Rec. Vol. 9 of 10, Sentencing Transcript, 7/14/15.

Cole, through counsel, filed a timely direct appeal to the Louisiana Fifth Circuit asserting[6]: (1) Insufficient evidence supported his conviction, focusing primarily on the credibility of the witnesses and the non-unanimous jury verdict. (2) The trial court erred in permitting Rhonda Skinner to read from a "Memorandum of Understanding" while testifying in violation of La. Code Evid. art. 612(B). (3) The trial court erred in permitting the State to make statements during closing argument that were unsupported by the evidence admitted during trial.

On December 23, 2015, the Louisiana Fifth Circuit affirmed the conviction and sentence finding sufficient evidence to support the guilty verdict; Skinner testified from her independent recollection of events after the trial court sustained the defense objection to Skinner reading from a memorandum during the initial portion of her testimony; the prosecutor's arguments were reasonable and, even assuming they were impermissible, the prosecutor's statements did not influence the jury or contribute to the guilty verdict.[7]

The Louisiana Supreme Court denied Cole's subsequent writ application without stated reasons on February 10, 2017.[8] Cole's conviction became final 90 days later, on May 11, 2017, when the time expired for Cole to file a petition for writ of certiorari with

---

[6]St. Rec. Vol. 8 of 10, Appellant Brief, 15-KA-358, 7/22/15.

[7] State v. Cole, 182 So. 3d 1192, 1198-1205 (La. App. 5th Cir. 2015); St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 15–KA–358, pp. 8-20, 12/23/15.

[8]State v. Cole, 215 So. 3d 700 (La. 2017); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2016-KO–0179, 2/10/17; La. S. Ct. Writ Application, 16 KO 179, 1/27/16 (dated 1/20/16).

the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200–01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

On September 14, 2017, Cole submitted an application to the state trial court for post-conviction relief, asserting the following claims:[9]  (1) He was denied effective assistance of counsel due to counsel's lack of preparation and failure to investigate.  (2) Counsel was ineffective in failing to (a) prepare and offer a proper defense; (b) make timely objections; (c) offer impeachment evidence concerning Skinner; (d) object to prosecutorial misconduct; and (e) call alibi witnesses including his mother and sister.  (3) Counsel was ineffective in failing to object to the non-unanimous jury verdict.  (4) Prosecutorial misconduct occurred during closing arguments.  Cole submitted a motion to file a supplemental brief asserting prosecutorial misconduct based on the presentation of perjured testimony, display of a weapon that was not the murder weapon and racially discriminatory jury selection.[10]  On December 28, 2017, the state trial court denied the application finding Cole's ineffective assistance of counsel claims meritless under Strickland v. Washington, 466 U.S. 668 (1984); his prosecutorial misconduct claim based

---

[9]St. Record Vol. 2 of 10, Uniform Application for Post-Conviction Relief and Brief in Support, dated 9/14/17.

[10]St. Rec. Vol. 2 of 10, Motion to File Pro Se Supplemental Brief to Post Conviction, 10/3/17 (dated 9/27/17).

on the closing argument barred under La. Code Crim. P. art. 930.4(A) and (B); and his prosecutorial misconduct claims based on the presentation of perjured testimony, introduction of a weapon that was not the murder weapon and racial discrimination during jury selection procedurally barred under La. Code Crim. P. art. 930.4(B).[11] Cole filed a traverse reiterating his claims and seeking an evidentiary hearing, which the trial court denied on January 24, 2018.[12]

On April 16, 2018, the Louisiana Fifth Court of Appeal denied Cole's related writ application finding that [13]: (1) Cole failed to meet his burden to prove ineffective assistance of counsel. (2) Cole's claims relating to the non-unanimous jury and prosecutorial misconduct during closing argument had previously been considered on direct appeal and were procedurally barred. (3) Cole's remaining prosecutorial misconduct and jury selection claims were procedurally barred for failing to assert them on direct appeal.

On April 8, 2019, the Louisiana Supreme Court denied Cole's related writ application finding Cole failed to show he received ineffective assistance of counsel

---

[11]St. Rec. Vol. 2 of 10, Trial Court Order, 12/28/17.

[12]St. Rec. Vol. 2 of 10, Trial Court Order, 1/24/18; Traverse in Opposition to the State's Response, 1/19/18 (dated 1/10/18).

[13]St. Rec. Vol. 9 of 10, 5th Cir. Opinion, No. 18-KH-54, 4/16/18; 5th Cir. Writ Application, 18-KH-54, 1/30/18 (dated 1/23/18).

under Strickland and to satisfy his post-conviction burden of proof under La. Code Crim

P. art. 930.2 as to his remaining claims.[14]

## II.    FEDERAL HABEAS PETITION

On June 3, 2019, Cole filed this petition for federal habeas corpus relief in which

he asserts the following grounds for relief:[15]  (1) His counsel provided ineffective

assistance in failing to (a) subpoena his mother and sister as witnesses; (b) prepare and

present a defense; (c) make timely objections; (d) impeach Rhonda Skinner; (e) protect

his due process rights when he failed to object to a non-unanimous jury verdict; (f) call

other alibi witnesses; and (g) object to prosecutorial misconduct.  (2) The Louisiana non-

unanimous jury rule amounts to racial discrimination and violates equal protection.  (3)

Prosecutorial misconduct occurred when the prosecutor elicited perjured testimony and

displayed a weapon to the jury that was not the murder weapon.  (4) The racially

discriminatory jury selection violated the Fourteenth Amendment.

The State filed an answer in response to Cole's petition in which it concedes that

this federal petition is timely.[16]  The State argues that Cole's substantive claim that the

non-unanimous jury system violates the Constitution is unexhausted and technically

procedurally barred.  The State argues that Cole's remaining claims lack merit and that

---

[14]State v. Cole, 267 So. 3d 80 (La. 2019) (per curiam); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2018-KH-0816; La. S. Ct. Writ Application, 18 KH 816, 5/10/18.

[15]Rec. Doc. No. 3.

[16]Rec. Doc. No. 21.

the denial of relief by the state courts was not contrary to, or an unreasonable application of, federal law. Cole did not file a reply.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[17] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Cole's petition, which, for reasons discussed below, is deemed filed in a federal court on June 3, 2019.[18] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state

---

[17]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Cole's deficient petition on June 3, 2018. The corrected petition was entered June 10, 2018 after petitioner paid the filing fee. Cole's signature on the original petition is dated June 3, 2019, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for filing with a federal court.

court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Cole's petition was timely filed.  However, the States contends that Cole failed to exhaust his substantive claim that the non-unanimous jury verdict violates equal protection .

IV.    EXHAUSTION DOCTRINE

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 177-79.

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

On direct appeal, Cole's counsel asserted[19]:

Only ten of the twelve jurors voted to convict Appellant of the crimes. (R. pgs. 682-83) Rationally speaking, the mere fact that some of the jurors remained unconvinced of Appellant's guilt is per se evidence that reasonable doubt exists as to the veracity of the State's accusations against Appellant. Allowing a conviction in the face of a divided jury undermines the reliability of the verdict and diminishes societal confidence in the criminal justice system, as a whole. In an era when so many convictions are later being shown false and defendants released after improperly serving years, sometimes decades in a penitentiary, the State has an obligation to citizens to do everything possible to decrease the possibility of an erroneous conviction. Permitting a conviction that results in a life sentence to stand on anything less than a unanimous finding of guilt does a disservice to the citizens of Louisiana.

---

[19]St. Rec. Vol. 8 of 10, Appellant Brief 15,-KA-358, p. 8, 7/22/15.

The Louisiana Fifth Circuit concluded that "[t]he constitutional and statutory requirements were satisfied by the concurrence of ten of the twelve jurors."[20]    Cole reiterated the argument in his writ application to the Louisiana Supreme Court.[21] Because, each court had the opportunity to consider the claim, claim number two has been exhausted, and the State's exhaustion defense as to claim number two is rejected.

V.    STANDARDS OF MERIT REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

---

[20]Cole, 1282 So. 3d at 1201; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 15-KA-358, p. 13, 12/23/15.

[21]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 16 KO 179, p.10, 1/27/16 (dated 1/20/16).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]' " <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Hill</u>, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) <u>White v. Woodall</u>, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)), and <u>Knowles v. Mirzayance</u>, 556

14

U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 1)

Cole alleges that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendment rights when his trial counsel failed to (1) subpoena his mother and sister and other alibi witnesses to testify; (2) investigate and adequately prepare and present a proper defense; (3) make timely objections; (4) impeach Skinner;

15

(5) object to the non-unanimous jury verdict; and (6) object to prosecutorial misconduct. He also appears to claim that the cumulative effect of his counsel's errors violated his rights.

The state trial court, in addressing counsel's failure to subpoena alibi witnesses, found that Cole failed to substantiate his claim factually, explaining that he did not present an affidavit from his sister and his mother's affidavit did not indicate when Cole was at her home in Baton Rouge and concluded, "[i]n light of the numerous witnesses who testified that, at the time of the murder, the petitioner was in Jefferson Parish, and the cell phone records showing this, even if his family members had testified for him, the jury would have been presented with more credible evidence in contradiction. Defense counsel is not deficient in failing to call witnesses lacking in credibility."[22] The trial court found that Cole's claim that his counsel failed to present a defense was contradicted by the record. The trial court concluded that "it is unmistakable that concerted efforts were made to defend the petitioner. Due to the weight of the evidence, not counsel's deficiencies, a jury found him guilty as charged."[23] Regarding his claim for failure to object to the non-unanimous verdict, the trial court found that "petitioner had the competent assistance of counsel in a fair proceeding with reliable results."[24] The trial

---

[22]St. Rec. Vol. 2 of 10, Trial Court Order, 12/28/17/

[23]Id.

[24]Id.

court did not specifically address the issues relating to trial counsel's failure to investigate, impeach Skinner or make timely objections. The Louisiana Supreme Court denied relief, applying <u>Strickland</u>.[25]

In <u>Strickland</u>, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Id.</u> at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994)

---

[25]<u>State v. Cole</u>, 267 So.3d 80 (La. 2017) (per curiam); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2018-KH-0816, 4/8/19.

17

(quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington</u>, 562 U.S. at 105. <u>Harrington</u> recognized the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." <u>Cullen</u>, 563 U.S. at 190 (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>,

540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227

F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions

when supported by the circumstances are objectively reasonable and do not amount to

unconstitutionally deficient performance. <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir.

1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564

(5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

      The issue of ineffective assistance of counsel is a mixed question of law and fact.

<u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox</u>, 609 F.3d at 789. Thus, the

question before this court is whether the state courts' denial of relief was contrary to or

an unreasonable application of United States Supreme Court precedent.

A.    <u>Failure to Investigate and Subpoena Alibi Witnesses to Testify</u>

      Cole asserts that his trial counsel failed to investigate the case and call alibi

witnesses to testify. He claims that his mother and sister could have testified that he was

with them in Baton Rouge on January 29, 2010.

      " 'A defendant who alleges a failure to investigate on the part of his counsel must

allege <u>with specificity</u> what the investigation would have revealed and how it would have

altered the outcome of the trial.' " (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In addition, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir.2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir.2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th

20

Cir.2009) (citing <u>Bray</u>, 265 F. App'x at 298).  The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"  <u>Hooks v. Thaler</u>, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting <u>Woodfox</u>, 609 F.3d at 808).

Cole has not met the foregoing requirements necessary to assert such a claim successfully as it relates to his sister or any unidentified alibi witnesses.  He presented no evidence to either the state courts or to this court, such an as affidavit from his sister or any unidentified alibi witnesses showing that they were available and would have testified in a manner beneficial to the defense.  He offers only self-serving, speculative and conclusory allegations that the proposed witnesses would have in fact testified and would have done so consistently with his version of the facts.  Therefore, petitioner failed to meet his burden of proof with respect to this claim as it relates to his sister and any unidentified alibi witnesses.  <u>See, e.g.</u>, <u>United States v. Cockrell</u>, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant

21

provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

While Cole submitted the July 3, 2017, affidavit of his mother, Darlene Cole, who states that petitioner was at her home on January 29, 2010, she does not indicate the time of day he was at her house.[26]  In addition, the affidavit, which is dated nearly seven years after the murder and three years after the trial, is not reliable.  See Strayhorn v. Booker, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (noting that "[l]ong-delayed affidavits" are "treated with a fair degree of skepticism").  The affiant's close familial relationship with Cole renders her affidavit inherently suspect.  See, e.g., Milton v. Secretary, Department of Corrections, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by relatives).  The affidavit is contradicted by the testimony of Tanisha Stamps, Katrice Batiste and Rhonda Skinner. Additionally, Detective Burke testified that Cole provided him with witnesses he alleged could confirm his presence in Baton Rouge on the day of the murder, and Burke interviewed each of those witnesses, including his wife and his girlfriend.[27]  Detective

---

[26]Rec. Doc. 3-5, p. 2.

[27]St. Rec. Vol. 8 of 10, Trial Transcript (con't), p. 127, 8/21/14.

Burke testified that cell phone tower records did not place Cole in Baton Rouge, and Burke was unable to find any evidence confirming his alibi.[28]   Rather, the evidence related to Cole's cell phone showed that he left Baton Rouge on January 27, 2010 and was in the Westbank area suburbs of New Orleans, including Woodmere and Westwego, on the date of the murder.[29]

Cole has failed to establish any deficiency or prejudice arising from his counsel's failure to investigate and subpoena his sister, his mother or any unnamed alibi witnesses. The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.

B.     Failure to Impeach Skinner

Cole asserts that his counsel was ineffective for failing to offer any impeachment evidence concerning Rhonda Skinner.

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009);

---

[28]Id., at pp. 127-128.

[29]St. Rec. Vol. 7 of 10, Trial Transcript, pp. 176-181, 8/20/14 (Ronald Kennedy).

Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

In the instant case, Cole simply has not met his burden with respect to this claim. Contrary to Cole's suggestion that his counsel failed to impeach Skinner's credibility, defense counsel in fact extensively and effectively cross-examined Skinner and attacked her credibility. The transcript demonstrates counsel pointed out that Skinner claimed to be Bates's good friend and that Bates had given her more than $200 the day before his murder; yet she admitted that she planned the robbery.[30] In response to defense counsel's questions about her many interviews with detectives, Skinner admitted that she had failed to tell the truth "twelve or thirteen" times.[31] Skinner also admitted that her boyfriend, Kenneth Devore, was involved in discussions regarding robbing the victim, although she

---

[30]St. Rec. Vol. 8 of 10, Trial Transcript (con't), pp. 49-50, 8/21/14.

[31]Id., at pp. 50-51.

claimed he was not present at the time of the murder.[32]   Defense counsel elicited

testimony that Skinner was testifying pursuant to a plea agreement limiting her potential

term of imprisonment to 20 to 30 years and that without the plea deal, Skinner faced life

in prison due to prior convictions.[33]

It is clear from the record that counsel attempted to discredit Skinner through

cross-examination in an effort to raise doubt about the reliability of her testimony and in

support of Cole's claim of actual innocence.  The testimony was presented to the jury,

which as the trier of fact, weighed and considered the testimony.  The fact that the jury

did not believe the defense does not render counsel's performance constitutionally

deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n

unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

"[I]t is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."

Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

Cole has failed to establish that the denial of relief by the state courts on this

ground was contrary to or an unreasonable application of Strickland.  He is not entitled

to relief on this claim.

C.    Failure to Make Timely Objections

---

[32]Id., at pp. 57-58, 63.

[33]Id., at pp. 54, 69-70.

Cole generally claims his counsel was ineffective for failing to "make timely objections."[34] Cole points to no specific instances that should have prompted an objection by his counsel.  Under <u>Strickland</u>, Cole must do more than merely state that his counsel stood silent without indicating what particular objections his counsel should have made at trial. <u>Moawad</u>, 143 F.3d at 948; <u>Green</u>, 160 F.3d at 1042.  Conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  <u>Miller</u>, 200 F.3d at 282.

The record demonstrates no objectionable questions or evidence presented by the State to which defense counsel did not object.  Counsel is not ineffective for failing to urge a baseless objection.  <u>See</u> <u>Johnson v. Cockrell</u>, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); <u>Smith v. Puckett</u>, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); <u>Koch v. Puckett</u>, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections."). Cole fails establish that his counsel's handling of the trial testimony and evidence was deficient or otherwise prejudicial to the defense.

---

[34]Rec. Doc. No. 3-3, p. 19.

Cole has not demonstrated that his counsel's actions fell below constitutional standards. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of <u>Strickland</u>. Cole is not entitled to relief on this claim.

D.      <u>Failure to Present a Defense</u>

Cole claims that his counsel was ineffective in failing to present a proper defense. To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one. <u>See, e.g.</u>, <u>Otero v. Louisiana</u>, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); <u>Higgins v. Cain</u>, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 F. App'x 405 (5th Cir. 2011).

Cole does not suggest a defense his counsel should have presented. Regardless, in this case, counsel actually presented the defense of actual innocence and/or reasonable doubt. The state court record reflects that Cole's counsel vigorously and meaningfully challenged the State's evidence at trial and argued that Skinner's boyfriend and Turner were the actual murderers.

The factual determination of Cole's guilt or innocence turned largely on the credibility of the witnesses. In Cole's defense, counsel attacked the credibility of the State's witnesses and the lack of physical evidence connecting Cole to the crime scene. As discussed above, there is no evidence that any witnesses were available to testify and that they would have done so in a manner beneficial to the defense. Counsel therefore

27

cannot be deemed ineffective for relying on the State's inability to support its case and effective defense cross-examination of the State's witnesses.  The fact that the defense was not successful does not mean that counsel's actions leading to the conviction were deficient.  See Martinez, 99 F. App'x at 543.

The denial of relief on this issue was neither contrary to nor an unreasonable application of Strickland and its progeny.  Cole is not entitled to relief on this issue

E.    Failure to Object to Non-Unanimous Verdict and Prosecuotrial Misconduct

Cole also argues that his counsel was ineffective for allowing a non-unanimous verdict and failing to object to instances of prosecutorial misconduct.  For the reasons explained below, counsel had no legal basis to have challenged Louisiana's non-unanimous verdict rule or object to the prosecution's conduct.

Cole's counsel did not act deficiently in failing to object to either the non-unanimous verdict or the prosecution's conduct.  As previously explained, counsel is not ineffective for failing to urge a frivolous objection or legally meritless claim.  See Johnson, 306 F.3d at 255; Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 527.  Nor has Cole demonstrated any prejudice resulting from his trial counsel's failure to object.

Cole fails to demonstrate either prong of the Strickland test.  His claims of ineffective assistance of counsel for failing to object to a non-unanimous verdict and the prosecution's conduct during trial have no merit.

F.    Cumulative Error

Cole's final claim of ineffective assistance of counsel, construed broadly, is that the combined errors of his counsel created cumulative prejudice, thus entitling him to habeas relief.   The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.' " Perez v. Dretke, 172 F. App'x 76, 81–82 (5th Cir. 2006) (quoting Derden v. McNeel, 978 F.2d 1453, 1457 (5th Cir. 1992)).

However, in Derden, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial when (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" Derden, 978 F.2d at 1454 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).   Later, the Fifth Circuit further clarified when such errors may be considered:

> Under this doctrine, "errors of state law, including evidentiary errors, are not cognizable in habeas corpus." [Derden, 978 F.2d] at 1458 (emphasis added).  Instead, such errors are of the requisite constitutional nature only if they "infuse[ ] the trial with unfairness as to deny due process of law." Id. (quoting [Lisenba v. California, 314 U.S. 219, 228 (1941) ] ).

Perez, 172 F. App'x at 82 (emphasis in original).

Perez did not specifically address whether a federal habeas claim could be made for the accumulation of deficiencies in the performance of counsel under Strickland.  To

evaluate such a claim, this court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively.  It is well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010).  As the Fifth Circuit has noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero." Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

The court has reviewed each of the alleged errors of trial counsel.  None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect.  See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (citing Derden, 978 F.2d at 1454, 1461 (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)).  Cole has failed to establish that denial of relief on this issue, or any facet of his ineffective assistance of counsel claim, was contrary to, or an unreasonable application, of Supreme Court law, including but not limited to Strickland.

VII.   NON-UNANIMOUS VERDICT

Cole argues that Louisiana's non-unanimous jury scheme violates the rights to due process and equal protection.  Cole claims he has "newly discovered evidence" in the form of "historical data" that demonstrates that Louisiana's non-unanimous jury

provision has a racially discriminatory effect on African-American defendants and jurors.[35]

This kind of challenge to the constitutionality of state law presents a pure question of law. Ortiz v. Quarterman, 504 F.3d 492, 496 (5th Cir. 2007). Thus, Cole may obtain federal habeas corpus relief as to this kind of claim only if the state courts' decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The decades-old and clearly established United States Supreme Court precedent applicable to this claim is directly contrary to Cole's argument. In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the United States Supreme Court upheld the constitutionality of state laws—including Louisiana's—that permitted criminal defendants to be convicted by less than unanimous votes. While the Supreme Court itself has described the Apodaca/Johnson holding as "the result of an unusual division among the Justices," it also made clear, in the same breath, that Apodaca/Johnson remains the law of the land: "The [Supreme] Court has held that, although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials." (citations omitted, emphasis added);

_____

[35]Rec. Doc. No. 3-3, pp. 4-15.

McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 3035 n. 14, 177 L.Ed.2d 894 (2010).

In the habeas corpus context, the Fifth Circuit has recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury must be rejected under Apodaca/Johnson: "We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court 'has not held that the Constitution imposes a jury unanimity requirement.'" Hoover v. Johnson, 193 F.3d 366, 369 (5th Cir. 1999) (quoting Richardson v. United States, 526 U.S. 813, 119 S.Ct. 1707, 1712, 143 L.Ed.2d 985 (1999) and citing Johnson, 406 U.S. at 366) (emphasis added).

Cole effectively concedes that the clearly established precedent in Apodaca and Johnson is contrary to his position. Cole seeks change in the law, but does not demonstrate contrary or unreasonable application of clearly established Supreme Court precedent in his case. Simply stated, Cole asks this Court to reconsider the Supreme Court's holdings in Apodaca and Johnson. On federal habeas corpus review, however, it is not the function of this court under the AEDPA to reassess the law pronounced by the Supreme Court. See White, 134 S.Ct. at 1706. Instead, the standard to be applied is whether the Cole's conviction based on a non-unanimous jury verdict was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Under Apodaca and Johnson and its progeny, including the decisions cited

32

above, the state courts' decisions in this regard were wholly consistent with Supreme Court precedent.

I recognize that the United States Supreme Court granted a writ of certiorari in Ramos v. Louisiana, 139 S. Ct. 1318 (2019), and is again considering the constitutionality of the non-unanimous jury verdict standard. Oral argument was held on October 7, 2019, and the issue is under advisement in the Supreme Court. That fact does not alter the application in this case of the currently existing United States Supreme Court precedent. (citing United States v. Short, 181 F.3d 620, 624 (5th Cir.1999) and Ellis v. Collins, 956 F.2d 76, 79 (5th Cir.1992)) United State v. Lopez-Velasquez, 526 F.3d 804, 808 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue.") Even if the Ramos Court grants relief, the retroactive effect of any such decision is entirely uncertain.

I further recognize that in 2018, Louisiana voters approved an amendment to Article I, Section 17(A) of the state constitution, to require unanimous jury verdicts in cases like this one. However, the state constitutional amendment is expressly limited to offenses "committed on or after January 1, 2019," so that it would not apply retroactively to Cole's case.

For all of the foregoing reasons, based upon the law as it currently exists, Cole is not entitled to federal habeas corpus relief on this claim.

33

VIII.   PROSECUTORIAL MISCONDUCT

Cole claims that the State relied on false testimony from Rhonda Skinner to obtain his conviction.  He further claims that the prosecution introduced a weapon found at the co-defendant's house that was not the murder weapon.   When Cole asserted these specific claims on post-conviction review, the trial court found that he failed to meet his burden of showing misconduct by the prosecution the claims were procedurally barred by La. Code Crim. P. art. 930.4(B) for failing to raise the issues on direct appeal.  In the last reasoned state court opinion, the Louisiana Supreme Court found he failed to meet his burden of proof under La. Code Crim P. 930.2.

As to the claim relating to Skinner's testimony, a State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  Duncan, 70 F. App'x at 744 (citing Nobles, 127 F.3d at 415).

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997), United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)); Thompson, 161 F.3d at 808. This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

In this case, Cole asserts that Skinner gave at least seven pretrial statements before her grand jury testimony and that her trial testimony contradicts each and every statement and her grand jury testimony. The trial court concluded that Cole failed to prove that Skinner testified before the grand jury and that "[a]s far as her other statements, Ms. Skinner's prior inconsistent statements were known to the jury."[36] Cole's claim is entirely conclusory. Cole has not established that any particular testimony by Skinner was actually false or that the State knowingly presented false testimony.

In its opening statement, the prosecution candidly admitted that Skinner had initially lied during the investigation[37]:

> They get Ms. Skinner's phone number, and they do a ping, to do a locate, and they locate her in the Siesta Motel on the Westbank Expressway. They

---

[36]St. Rec. Vol. 2 of 10, Trial Court Order, 12/28/17.

[37]St. Rec. Vol. 7 of 10, Trial Transcript, pp. 15-16, 8/19/14.

set up outside the hotel, they surround it, they find out what room she's in, they known on the door and they go in and they arrest her, and they take her, and they take her to the sheriff's bureau.  While they do that she's taking the SIM card out of her phone. At the time she says she threw it in the parking lot, she's going to tell you that was a lie, that's not where it went, but they get her and they bring her to the bureau, and they start taking statements from her over almost two days, she's willing to talk to the police. Her nickname is "Minnie Cat," she's willing to talk to the police and she gives a series of statements, statement number one, she lies. Statement number two, she lies, statement number three she starts to name some names, and she still hasn't accepted responsibility.  And it's not until it progresses and they're able to confront the lies with facts, cause you see, they have the phone records in front of them.  They know where she was, at what time, and she says, "Oh, no, I was in Beechgrove, I was in Westwego". Uh-uh, your phone puts you somewhere else.  So they break the story down over a period of time, over a period of seven statements and this is what you're going to hear about from her, and she's a character, don't get me wrong, and she's a liar don't get me wrong about that either. She was a defendant on this case and is a defendant on this case.  You shouldn't believe anything she says accept [sic] for the corroboration. She's a convicted felon.  She's going to come up to you not wearing a nice outfit, but in shackles and orange, and tell her story....

As previously discussed, defense counsel vigorously cross-examined Skinner.  To the extent Cole disagrees with Skinner's testimony and contends that it conflicted with other testimony and/or was not corroborated by physical evidence, the mere existence of a conflict in testimony and evidence does not make it false or perjured.  See United States v. Wall, 389 F.3d 457, 473 (5th Cir. 2004), cert. denied, 544 U.S. 978, 125 S.Ct. 1874, 161 L.Ed.2d 730 (2005) ("Wall has not established that McDowell's testimony was actually false.  He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.' ").  The evidence in

this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's exclusive function to resolve.

Based on the record and as found by the state courts, Cole has not established that Skinner presented false testimony or that the State suborned perjury through her testimony. The denial of relief on this issue was not contrary to or an unreasonable application of federal law. Cole is not entitled to relief on this claim.

Regarding Cole's claim relating to the introduction into evidence of the firearm, the trial court found, "[t]here was no testimony connecting this weapon with the gun to murder the victim, nor was there any confusion on where the weapon was found. For this reason, the jury was not misled by knowing the results of the police investigation."[38] In the last reasoned state court opinion, the Louisiana Supreme Court found he failed to meet his burden of proof under La. Code Crim P. 930.2.

When a due process violation is grounded in alleged prosecutorial misconduct, the habeas petitioner must demonstrate that "the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred" but for the alleged misconduct. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). Thus, federal habeas corpus relief is not available unless the alleged misconduct

---

[38]St. Rec. Vol. 2 of 10, Trial Court Order, p. 3, 12/28/17.

so infected the trial with unfairness that it denied the defendant due process. <u>Darden v.</u>

<u>Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

In this case, the prosecution, through the testimony of Detective Burke, presented

evidence that the detectives obtained warrants and searched co-defendant Turner's

residence and another residence where Skinner had been immediately after the murder.[39]

Detective Burke testified that officers recovered a firearm from Turner's bedroom and

collected it to determine whether it was the murder weapon.[40]  However, Burke testified

that the weapon did not trace back to the bullets or the casings from the murder scene.[41]

Jene Rauch, a senior firearms and tool-mark examiner with the Jefferson Parish Sheriff's

Office, similarly testified that the firearm recovered was not the one used to murder the

victim.[42]  The prosecution also admitted during closing argument that the murder weapon

was never found.[43]

The prosecution's introduction of this evidence does not constitute prosecutorial

misconduct.  The firearm was recovered during execution of a search warrant at co-

defendant Turner's residence as part of the investigation of the victim's murder.  Such

evidence has been found to be admissible in similar cases.  <u>See</u> <u>State v. Burbank</u>,  811

---

[39]St. Rec. Vol. 8 of 10, Trial Transcript (con't), pp. 105-111, 119, 8/21/14.

[40]<u>Id.</u>, at pp. 108-109.

[41]<u>Id.</u>, at pp. 129-130, 132.

[42]<u>Id.</u>, at pp. 150, 153.

[43]St. Rec. Vol. 8 of 10, Trial Transcript, p. 29, 8/22/14.

So.2d 1112, 1121-1122 (La. App. 4th Cir. 2002) (weapon found in the defendant's home during execution of a search warrant that was determined not to be the murder weapon was admissible), rev'd in part on other grounds, 872 So. 2d 1049 (La. 2004); State v. Lewis, 96 So.3d 1211, 1219-1220 (La. App. 5th Cir. 2012) (gun box recovered during execution of search warrant was relevant and jury was explicitly made aware that the firearm was not the murder weapon so there was little possibility the jury was confused or misled by admission of the evidence).

Even if the firearm was not admissible, Cole has not shown that the prosecution's misconduct in exposing the jury to the evidence "so infected the trial with unfairness that it denied the defendant due process." Darden, 477 U.S. at 181. As explained above, the prosecution forthrightly made it clear to the jury that the gun found at Turner's residence was not the murder weapon and that the murder weapon was never recovered.

The denial of relief by the state courts on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent. Cole is not entitled to federal habeas corpus relief on this claim.

IX.    RACIALLY DISCRIMINATORY JURY SELECTION

Cole's final claim is that the prosecution engaged in racial discrimination during jury selection and that "Article 795(C) and (E) as applied violated petitioner's challenge rights under the Equal Protection Clause of the 14th Amendment."[44] Cole asserted this

---

[44]Rec. Doc. No. 3-3, p. 18.

issue in his application for post-conviction relief.  The Louisiana Supreme Court found

that he failed to meet his burden of proof, citing La. Code Crim P. art. 930.2.[45]

In <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986), the Supreme Court held that

purposeful racial discrimination in the use of peremptory strikes of prospective jurors

violates the Equal Protection Clause.  The United States Supreme Court has outlined the

appropriate analysis for addressing a <u>Batson</u> challenge:

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry.  First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  476 U.S., at 96-97, 106 S.Ct. 1712.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.  <u>Id.</u>, at 97-98, 106 S.Ct. 1712.  Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices.  <u>Purkett v. Elem</u>, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam).  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  <u>Batson</u>, <u>supra</u>, at 98, 106 S.Ct. 1712; <u>Miller-El v. Dretke</u>, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005).  This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  <u>Purkett</u>, <u>supra</u>, at 768, 115 S.Ct. 1769.

<u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006); <u>accord</u> <u>Stevens v. Epps</u>, 618 F.3d 489, 492

(5th Cir. 2010).

To establish a prima facie case, the petitioner must show a combination of the

following factors: (1) The prosecutor's challenge was directed at a member of a

---

[45]<u>Cole</u>, 267 So. 3d at 80; St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2018-KH-0816, 4/8/19.

defendant's cognizable racial group. (2) The challenge was peremptory rather than for cause. (3) Sufficient circumstances raise an inference that the prosecutor used peremptory strikes to exclude the venire person because of race. Batson, 476 U.S. at 96. As the United States Fifth Circuit made clear, unless this prima facie showing is made, there is no need for the court to consider the final two steps:

> The Supreme Court and this court have both granted writs based on findings that state courts had made unreasonable factual determinations in rejecting Batson claims. Miller-El II, 545 U.S. at 266, 125 S.Ct. 2317; Reed [v. Quarterman], 555 F.3d [364,] 382 [5th Cir. 2009]. In doing so, those cases relied heavily on comparative juror analysis. That analysis comes into play in the final stage of the Batson inquiry for determining whether a prosecutor used a peremptory strike in a racially discriminatory manner. Before that point, the defendant must have first made a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race; in response, the prosecutor must have articulated a race-neutral reason for striking the juror in question. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. That requires the court to then make the ultimate determination whether the defendant carried her burden of proving purposeful discrimination. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712; see Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

Chamberlin v. Fisher, 855 F.3d 657, 663-64 (5th Cir. 2017).

Once the court reaches the final stage of determining whether purposeful discrimination has occurred, "the defendant may rely on all relevant circumstances to raise an inference of purposeful discrimination." Fields v. Thaler, 588 F.3d 270, 274 (5th Cir. 2009) (quoting Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (internal quotations omitted). Batson noted that circumstances to be considered when ultimately deciding purposeful discrimination include a "pattern" of strikes against jurors and the nature of

the questions and statements by the prosecutor during voir dire. <u>Batson</u>, 476 U.S. at 96-97. Considerations enumerated by other federal courts include (1) the percentage of similar panelists challenged by the prosecutor with a peremptory strike, (2) comparison of stricken panelists to white panelists allowed to serve, (3) the prosecutor's use of procedural mechanisms to move particular jurors to the back of the panel, where they are less likely to be selected, (4) evidence of contrast between questions posed to black and non-black panelists indicating intent to load questions to make a case to exclude the black panelists, and (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors. <u>United States v. Nelson</u>, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing <u>Miller-El v. Dretke</u>, 545 U.S. at 231).

The neutrality issue under the second step of <u>Batson</u> and the ultimate question of discriminatory intent under the third step are questions of fact. <u>Hernandez v. New York</u>, 500 U.S. 352, 364, 369 (1991); <u>accord Rice</u>, 546 U.S. at 338-342; <u>Moody</u>, 476 F.3d at 267 (citing <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995)). The Supreme Court has emphasized that, pursuant to Section 2254(e), state court factual findings must be presumed correct, unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003). If convincing evidence establishes that the factual determination was unreasonable, the federal habeas court's focus must be on the third

step of the Batson test.  Rice, 546 U.S. at 342;  Moody, 476 F.3d at 266.  At that step, "we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)." Miller-El v. Dretke, 545 U.S. at 240; Moody, 476 F.3d at 267.

The Supreme Court has emphasized that, pursuant to Section 2254(e), state court factual findings must be presumed correct, unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).  If convincing evidence establishes that the factual determination was unreasonable, the federal habeas court's focus must be on the third step of the Batson test.  Rice, 546 U.S. at 342, 126 S.Ct. 969; Moody, 476 F.3d at 266.  At that step, "we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)." Miller-El, 545 U.S. at 240, 125 S.Ct. 2317; Moody, 476 F.3d at 267.

In this case, Cole has not demonstrated a prima facie case of racial discrimination. While the record reflects that the prosecution exercised peremptory challenges to three prospective jurors, there is no record that any objection was lodged by the defense to those challenges.[46]  Cole provides no evidence demonstrating the race of the excluded

---

[46]St. Rec. Vol. 1 of 10, Trial Minutes, 8/19/14.

jurors or any evidence to support his unsupported allegation that the State misused its peremptory strikes.  He submits no evidence of the racial composition of the venire or the racial composition of the final trial jury.  He offers no reasons for his failure to do so here or in the state courts.  While there is no transcript of the voir dire from his trial, given that there was no <u>Batson</u> objection made during jury selection, the transcript would not assist in analyzing Cole's claim as it likely would not have revealed the race of the prospective jurors.

Cole has not shown that the denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Cole's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

44

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[47]

New Orleans, Louisiana, this _____2nd_____ day of January, 2020.

—————————————————————
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[47]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.